Jorge **BARTESAGHI–LAY,** Petitioner,

v.

## IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 93–9516.

United States Court of Appeals, Tenth Circuit.

Sept. 30, 1993.

---

Submitted on the briefs: *

Lawrence E. Davis of Davis & Shelton, Oklahoma City, OK, for petitioner.

Frank W. Hunger, Asst. Atty. Gen., Civ. Div., David J. Kline, Asst. Director, and David M. McConnell, Attorney, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, DC, for respondent.

Before LOGAN and MOORE, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.

McWILLIAMS, Senior Circuit Judge.

Jorge Bartesaghi–Lay, hereinafter referred to as the petitioner, entered the United States "without inspection" near Brownsville, Texas on April 14, 1991. The petitioner, a citizen of Peru, was immediately placed in deportation proceedings. In those proceedings, petitioner requested asylum in the United States, a withholding of deportation, and, in the alternative, voluntary departure. A hearing was held before an Immigration Judge who rendered a decision wherein petitioner's request for asylum and a withholding of deportation was denied, although he was granted voluntary departure status in lieu of deportation from the United States. The petitioner appealed the decision of the Immigration Judge to the Board of Immigration Appeals (hereinafter referred to as "the Board") which, in effect, affirmed the judge's decision. Thereafter petitioner filed a timely petition for review with this court. 8 U.S.C. § 1105a(a) and 28 U.S.C. § 158.

At the hearing before the Immigration Judge, petitioner was represented by counsel and testified through an interpreter. From his testimony we learn that he is a 39–year old Peruvian national, who was placed in deportation proceedings after an unlawful entry at Brownsville, Texas. Petitioner stated he was en route to Canada where "he had friends" who had been granted asylum in that country. For some 14 years petitioner

* Counsel for both parties have waived oral argument. After examining the briefs and appellate record, this panel has determined that oral argument would not materially assist the determination of this appeal. The case is therefore ordered submitted without oral argument. *See* Fed. R.App.P. 34(a) and 10th Cir.R. 34.1.9.

had served in the Peruvian Merchant Marines as a sailor and had been in the United States numerous times while so serving. He stated that frequently drugs were smuggled into the United States along with cargo.

A few years before his illegal entry at Brownsville, petitioner left the Merchant Marines, a leave that was prompted, at least in part, when he learned that the ship he was then working on was, *inter alia*, smuggling drugs. Petitioner then took a job in Lima, Peru. About this time, petitioner became friends with a former acquaintance in the army who was a member of the Tupac Amaru Revolutionary Group (MRTA), a left wing group dedicated to overthrowing the right wing group then ruling Peru. He eventually learned that MRTA engaged in drug smuggling activities and used the money derived therefrom to finance its political activities. Petitioner was invited to participate in MRTA's drug smuggling operations, but he turned down the invitation since he was not in sympathy with MRTA's aims and, as a "believer in capitalism," supported the right wing group then in control in Peru. Petitioner testified that when he turned down the invitation to join MRTA, he was threatened not to tell anyone what he knew about MRTA "at the risk of death." Shortly thereafter, petitioner decided to leave Peru and go to Canada, hoping to find a safe haven there. Accordingly, he left Peru, leaving behind a wife and two children, and was en route to Canada when he was apprehended at the Texas border.

A change of venue having been granted, the hearing before the Immigration Judge was held in Oklahoma City, Oklahoma. The evidence adduced before the Immigration Judge consisted of various documents, as well as the testimony of the petitioner. After summarizing the evidence, the Immigration Judge found, *inter alia*, that the petitioner had failed to show a "well-founded fear of persecution" should he be returned to Peru on any of the grounds enumerated in 8 U.S.C. § 1101(a)(42), and therefore was not entitled to asylum, nor had he shown a clear probability of persecution on any of the grounds set forth in 8 U.S.C. § 1253(h) which would entitle him to a withholding of deportation. The Immigration Judge indicated that MRTA had attempted to recruit the petitioner because of his prior experience in smuggling drugs into other countries, which ability he had acquired while serving in the Peruvian Merchant Marines, and that petitioner had in reality fled Peru because of "general conditions," not because of a well-founded fear of persecution by MRTA for his political opinions. As indicated, the Immigration Judge also found that petitioner was eligible for voluntary departure and granted him until July 20, 1992, to voluntarily depart the United States, and in the event he did not so depart, ordered his deportation to Peru.

On review, the Board affirmed, in effect, the Immigration Judge, holding that petitioner was not entitled to asylum or a withholding of deportation, but was granted 30 days to voluntarily depart the country.

On appeal to this court, petitioner's basic position is that the Board's decision is not supported by the record, and that, in fact, the record *compels* a finding that petitioner is entitled to asylum and a withholding of deportation.[1] We disagree and hold that the record supports the Board's decision.

The Immigration and Nationality Act sets forth two methods whereby an otherwise deportable alien claiming persecution if deported can seek relief. They are asylum and withholding of deportation. In the instant case, petitioner sought both, each of which was denied. *Kapcia v. I.N.S.*, 944 F.2d 702, 706 (10th Cir.1991).

### Asylum

8 U.S.C. § 1158(a) provides as follows:

The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or

---

1. In *I.N.S. v. Elias–Zacarias,* —— U.S. ——, —— n. 1, 112 S.Ct. 812, 815, n. 1, 117 L.Ed.2d 38 (1992), the Supreme Court held that in order to reverse the Board's finding that an alien is not entitled to asylum or a withholding of deportation, it must find that the evidence *not only* supports a conclusion that the alien is entitled to asylum or a withholding of deportation, but *compels* such a finding.

port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

8 U.S.C. § 1101(a)(42) provides, in part, as follows:

(42) The term "refugee" means (A) any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, ...

■ Although the persecution which petitioner here complains of does not emanate from the present Peruvian government, which indeed petitioner sympathizes with, it is apparently agreed that the possible persecution to be established by an alien in order for him to be eligible for asylum may come from a non-government agency which the government is unwilling or unable to control. *McMullen v. I.N.S.*, 658 F.2d 1312, 1315, n. 2 (9th Cir.1981) and *Rosa v. I.N.S.*, 440 F.2d 100, 102 (1st Cir.1971).

As stated in *Kapcia, supra*, if an alien be determined to be a "refugee," as defined by the statute, then the Attorney General may grant asylum. In the instant case, the Board held that petitioner was not a "refugee" within the meaning of the statute, and on that basis denied asylum to the petitioner. In this connection, the Board spoke as follows:

We cannot conclude that these facts establish the respondent's eligibility for asylum in the United States. Taking the respondent's testimony as true for the purpose of analysis, the record is clear that the respondent was solicited for MRTA's drug-smuggling operations by virtue of his employment as a sailor, not for any political reasons. When the respondent refused, he placed himself at risk of harm since the MRTA members wished to insure the secrecy of their plans, not due to any concern about the respondent's political opinion. The fact that the MRTA has an ultimately political rather than purely criminal purpose does not alter their motive to silence the respondent in this regard. As such, the respondent's fear, although perhaps objectively as well as subjectively valid, is not on account of one of the five qualifying grounds set forth in section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42);

■ We review the Board's factual findings of whether an alien is a "refugee" as defined in the statute under the substantial evidence standard. *Kapcia, supra*, at p. 707. Our review of the record convinces us that the Board's determination that petitioner does not fit any of the statutory definitions of "refugee" is supported by the record. Petitioner's testimony permits the inference that he was being recruited by MRTA because of his prior experience in drug smuggling, and that possible persecution by MRTA, should he be returned to Peru, was prompted by the fact that he declined to become involved in MRTA's drug smuggling, and not because of his political opinions. *I.N.S. v. Elias–Zacarias*, —— U.S. ——, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

### Withholding Deportation

8 U.S.C. § 1253(h) provides as follows:

**(h) Withholding of deportation or return**

(1) The Attorney General shall not deport or return any alien (other than an alien described in section 1251(a)(4)(D) of this title) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

■ Consistent with its holding that petitioner was not a "refugee," as defined by 8 U.S.C. § 1101(a)(42), the Board also found that petitioner was not subject to possible persecution in Peru "on account of [his] race, religion, nationality, membership in a partic-

ular social group, or political opinion," as required by 8 U.S.C. § 1253(h), and therefore was not entitled to have deportation withheld. Again, the Board was of the view that any possible persecution of petitioner on a return to Peru was not based on his "political opinion," but on the fact that he refused to get involved in drug smuggling. The record permits such a finding. *I.N.S. v. Elias–Zacarias,* —— U.S. ——, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

Decision affirmed.