**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 7 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

SAID NASIR, HENNA NASIR,
SAID NASIR, SHAIMA NASIR,

Petitioners,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

Respondent.

No. 00-9544
(Nos. A70 801 354, A70 801 355,
A70 801 356, A70 801 357)
(Petition for Review)

ORDER AND JUDGMENT  *

Before **EBEL** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioners Said and Henna Nasir and their children, Said and Shaima Nasir have filed a petition for review of the decision of the respondent Immigration & Naturalization Service which denied their    applications for asylum and withholding of deportation.  The immigration judge (IJ) found them deportable, granted Mr. and Mrs. Nasir's request for withholding of deportation to their native Afghanistan, but denied the family's request for asylum, determining that they were firmly resettled in Germany, where the children were born, although they are not citizens or residents.  The IJ granted them voluntary departure. We deny the petition for review.

Mr. Nasir fled Afghanistan in 1979 and went to Germany where he was granted permanent refugee status and lived for almost fourteen years.  Mrs. Nasir also fled Afghanistan, going to Pakistan.  She married Mr. Nasir in 1984 and went to Germany with her husband.  In 1992, the Nasirs    entered the United States as nonimmigrant visitors for pleasure, authorized to remain until 1993.  They applied for asylum prior to the expiration of their visas.

Because the INS commenced deportation proceedings against petitioners before the effective date of the Illegal Immigration Reform & Immigrant Responsibility Act (IIRIRA), "and the final deportation order was entered after October 31, 1996, our review is governed by the pre-IIRIRA rules as amended by IIRIRA's transitional rules. . . .  Under the transitional rules, [8 U.S.C.] § 1105a

remains in effect but for minor procedural amendments." Woldemeskel v. INS, 257 F.3d 1185, 1187 n. 1 (10th Cir. 2001).

We must uphold t he Bureau of Immigration Appeals' (BIA) determination that petitioners are not eligible for asylum if that decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quotation omitted). We may reverse the decision only if the evidence petitioners presented "was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Id.[1]

An application for asylum involves two steps. First, the alien must demonstrate statutory eligibility by establishing refugee status, by proving either "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Kapcia, 944 F.2d at 706 (quotation omitted). "Persecution" is defined as "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive [and] encompass[es] more than just restrictions or threats to life and liberty." Baka v. INS, 963 F.2d 1376, 1379

---

[1]    While we may not "weigh the evidence or . . . evaluate the witnesses' credibility," Kapcia v. INS, 944 F.2d 702, 707 (10th Cir. 1991)   (quotation omitted), no such review is sought here as the IJ found the Nasirs to be fully credible.

(10th Cir. 1992) (quotations omitted).  Analysis of a claim based on a well-founded fear of persecution includes a subjective and an objective component.  Kapcia, 944 F.2d at 706.  The applicant must prove the objective component by "credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution."  Id. (quotation omitted).  If an objective basis is shown, the applicant must then show that his subjective fear is genuine.  Id.

The persecution may come from a non-governmental source if the alien can establish that the government is "unwilling or unable to control" the source.  de la Llana-Castellon v. INS, 16 F.3d 1093, 1097 (10th Cir. 19 94); see also Bartesaghi-Lay v. INS, 9 F.3d 819, 822 (10th Cir. 19 93) (addressing whether alien had well-founded fear of persecution by non-government para-military group).

The IJ held that the Nasirs had established that they were persecuted by non-governmental sources, i.e., skinheads and Neo-Nazis.  [2]  However, the IJ also determined that the Nasirs had not     shown that the German government was unwilling or unable to protect them from their persecutors.  Based on the record presented to United States, we cannot find error in this decision.      See R. Vol.1

---

[2]     To the extent that these two groups may differ, we identify both as persecutors of the Nasirs.

-4-

at 4, 1999 Country Report on Germany (stating that crimes against foreign residents were continuing to decline and noting that the government was "firmly committed to combating and preventing rightwing violence," p. 17, and was searching for more effective measures to root out extremist crimes).

The Nasirs also appeal the BIA's determination that they were firmly resettled in Germany. See 8 C.F.R. § 208.13(c)(2)(i)(B) (asylum is not available if alien is firmly resettled in another country). "An alien is considered to be firmly resettled if prior to arrival in the United States, he or she entered into another nation with, or while in that nation received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement . . . ." Id. § 208.15.

If the alien claims not to be firmly resettled, he or she must establish "that the conditions of his or her residence in that country were so substantially and consciously restrictive . . . that he or she was not in fact resettled." Id. § 208.15(b). The alien may also defeat the finding of firm resettlement by establishing that his "entry into that country was a necessary consequence of his or her flight from persecution, that he or she remained in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country . . . ." Id. § 208.15(a).

In determining whether an alien is firmly resettled, the IJ will

consider the conditions under which other residents of the country live; the type of housing, whether permanent or temporary, made available to the refugee; the types and extent of employment available to the refugee; and the extent to which the refugee received permission to hold property and to enjoy other rights and privileges, such as travel documentation that includes a right of entry or reentry, education, public relief, or naturalization, ordinarily available to others resident in the country.

Id. § 208.15(b).

The record shows that Mr. Nasir was granted permanent refugee status and lived in Germany fourteen years. While there, he worked as a translator of German for Iranians, Pakistanis, and Afghanis. His last two years there, he was also a social worker. His son was enrolled in kindergarten, although the Nasirs had to remove him from it out of fear for his safety. Further, Mr. Nasir was permitted to reenter Germany after his initial entry into the United States.

Mr. Nasir counters that he has lost his permanent refugee status in Germany. Further, he points out that Mrs. Nasir was never granted refugee status and that his children are not German citizens and have no right to return to Germany. The record contains evidence that the Nasirs' residence permits have expired and they are not entitled to a residence permit at this time. Thus, they will have to re-apply for a residence permit. The German government has no legal obligation to readmit them and, further, since they have been in the United States for over a year, their application for readmission would "most probably" be rejected. R. Vol. II at 210-11.

-6-

Whether Germany will readmit the Nasirs is not, however, a question which is now before us. Although the Nasirs may now have trouble reentering Germany, "[t]he pertinent regulations specifically focus on resettlement status *prior to* the alien's entry into this country; they thus preclude a deportable alien from bootstrapping an asylum claim simply by unilaterally severing his existing ties to a third country after arriving in the United States." Abdalla v. INS, 43 F.3d 1397, 1400 (10th Cir. 19 94).

At the time the Nasirs came to the United States, they were firmly resettled in Germany. The IJ's decision is supported by the record. Finding no reversible error in the BIA's decision, we DENY the petition for review.

Entered for the Court


Mary Beck Briscoe
Circuit Judge