**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 22 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BISSER LISSITCHEV,

Petitioner,

v.

JOHN ASHCROFT, Attorney General
for the United States,

Respondent.

No. 03-9519
(INS No. A76-799-666)
(Petition for Review)

**ORDER AND JUDGMENT** *

Before **LUCERO** , **McKAY** , and **TYMKOVICH** , Circuit Judges.

Petitioner Bisser Lissitchev seeks review of the Board of Immigration

Appeals (BIA) decision denying his application for withholding of removal

---

\*      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

pursuant to 8 U.S.C. § 1231(b)(3)(A). [1] The BIA affirmed the oral decision of the immigration judge (IJ) without analysis, making the IJ's decision the final agency decision for purposes of appellate review. See Tsevegmid v. Ashcroft, 336 F.3d 1231, 1235 (10th Cir. 2003). We have jurisdiction under 8 U.S.C. § 1252(a) to review the agency's denial of withholding, see Tsevegmid, 336 F.3d at 1235, **VACATE** the BIA's order, and **REMAND** to the agency for further proceedings.

To be granted withholding of removal, Lissitchev must demonstrate a "clear probability of persecution attributable to race, religion, nationality, membership in a particular social group, or political opinion." Id. (quotations omitted). The IJ denied withholding based on his conclusion that Lissitchev's testimony about his experiences in Bulgaria was not credible in light of the State Department's profile of that country and certain specified inconsistencies between the testimony and the record.

Credibility is a finding of fact. See Sviridov v. Ashcroft, 358 F.3d 722, 729 (10th Cir. 2004); Secaida-Rosales v. INS, 331 F.3d 297, 307 (2d Cir. 2003). The IJ's credibility findings are deemed "conclusive unless any reasonable

---

[1] Lissitchev originally sought asylum as well as withholding of removal. Asylum was denied because his application was untimely. Counsel concedes that this court lacks jurisdiction to review a time-barred asylum claim, see Tsevegmid v. Ashcroft, 336 F.3d 1231, 1235 (10th Cir. 2003). Lissitchev also sought relief under the United Nations Convention Against Torture, which was denied. Counsel raises no argument with respect to this claim; therefore it is waived. See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Section 1252 codifies the substantial evidence standard previously set forth by the Supreme Court in INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (BIA decisions must be upheld if "supported by reasonable, substantial, and probative evidence on the record as a whole.") (quotation omitted). See Dia v. Ashcroft, 353 F.3d 228, 247 n.17 (3d Cir. 2003) (en banc) (collecting cases); Rivera-Jimenez v. INS, 214 F.3d 1213, 1216 n.4 (10th Cir. 2000) ("[N]o federal court has held that this statutory provision modifies the substantial evidence standard previously applied.").

Under the substantial evidence standard, we do not weigh the evidence or evaluate Lissitchev's credibility, but we do examine the agency's determination to see whether there is a rational connection between the credibility determination and the stated reasons therefor. See Woldemeskel v. INS, 257 F.3d 1185, 1189 (10th Cir. 2001). Because an alien's testimony alone may support relief from removal, an IJ must give "specific, cogent reasons" for disbelieving the testimony, Sviridov, 358 F.3d at 727 (quoting Secaida-Rosales, 331 F.3d at 307).

Lissitchev, a native of Bulgaria, testified that he was a member of VMRO, an organization that has as its goal the reunification of all traditional Macedonian territory into a single state. His grandfather founded the VMRO branch in Doupnitza, the town where the Lissitchevs lived. His father was active in the

-3-

organization, as was Lissitchev. He stated that he recruited new members, and spent several hours a week in VMRO meetings with his father, who taught new members the history and goals of the organization. He also stated that he and his family were subject to harassment and threatening phone calls, and that he was regularly roughed up by persons who were members of groups antithetical to VMRO. He testified that, once or twice every ten days, he was taken from public places and beaten by assailants who told him to quit VMRO and to tell his father to stop his activities in the organization. Lissitchev said that each of these "beatings" lasted only a couple of minutes, that his assailants never punched him in the face, and that the results of these "beatings" were only bruises. He stated that, between 1994 and August of 1997, he was assaulted in this manner over 100 times.

Lissitchev further testified about an incident that happened in August 1997. He and his father were abducted by men in masks, driven to a nearby fort, and beaten severely. Again, the assailants warned Lissitchev and his father to cease their activities in VMRO. He testified that his father was tied to a tree, and hit with a stone. The assailants splashed gasoline on Lissitchev and lit him on fire with a match. When Lissitchev gained consciousness, he was in a hospital next to his father. He testified that they tried to report the incident to the Bulgarian police but that the police refused to take the report and accused Lissitchev of

causing the injuries himself.  After this incident, Lissitchev came to the United States.

The IJ determined that Lissitchev's testimony was not credible.  In so concluding the IJ relied on four points.  First, the IJ stated it was unlikely that Lissitchev was persecuted on account of his membership in VMRO because the State Department report on Bulgaria indicated that persecution "by the authorities" was unlikely "for mere membership in an organization."  I R. at 53.  However, this statement mischaracterizes both Lissitchev's testimony and the State Department report.  Lissitchev complained of persecution, not by the authorities, but rather by a group of people opposed to VMRO.  See Bartesaghi-Lay v. INS, 9 F.3d 819, 822 (10th Cir. 1993) (noting that persecution "may come from a non-government agency which the government is unwilling or unable to control").  Further, the only portion of the State Department report that mentions "mere membership" discusses membership in OMO-Ilinden, a different organization that advocates separatism for Macedonians.  In full, the pertinent sentence says:  "While it is possible that activists might encounter mistreatment under some circumstances, mere membership and/or support do not, in our view, form grounds for significant concern."  I R. at 329.  Even if this sentence were considered applicable to other organizations such as VMRO, it is clear from Lissitchev's testimony that he was not a "mere member," but an active recruiter of

new members to the organization. Moreover, his family's involvement in VMRO spanned three generations and he was clearly known by VMRO opponents, as demonstrated by several years of alleged mistreatment.

The IJ further grounded its negative credibility determination by reasoning that because VMRO was part of a coalition government between 1997 and 2000, it was unlikely that Lissitchev "would have been targeted for persecution by the authorities during the time that his political party was a member of the ruling coalition." Id. at 53. However, the conduct which forms the basis of Lissitchev's claim occurred before the 1997 parliamentary elections in Bulgaria. Again, Lissitchev did not claim that the authorities persecuted him, but instead, members of a group or groups opposed to the VMRO. There is no evidence in the record to suggest the political change in 1997 affected the anti-VMRO groups' treatment of Lissitchev, or the government's ability to control such groups.

The IJ also relied on what he considered to be inconsistencies among the record, Lissitchev's testimony, and application for asylum. He identified three such inconsistencies. First, in a medical report, translated from Bulgarian, hospital staff refer to the incident resulting in Lissitchev's burns as an "accident." Id. at 266. The IJ characterized this as "some indication" that Lissitchev was not actually attacked as he testified. Id. at 53. But Lissitchev explained that the police and medical personnel were not interested in investigating the incident

-6-

because they were afraid of the people who assaulted him. He also testified that the Bulgarian word used in the report which was translated as "accident" can also mean "incident." See Akinmade v. INS, 196 F.3d 951, 956 (9th Cir. 1999) (noting that "discrepancies . . . possibly the result of mistranslation or miscommunication" are insufficient to support an adverse credibility determination) (quotation omitted). Accordingly, the IJ's reliance upon the word "accident" in the translated medical report is not a valid ground for disregarding Lissitchev's testimony. See id. at 957 (reasoning that minor discrepancies in the record do not support an adverse credibility finding).

The next cited inconsistency is a detail about the burning incident. Lissitchev testified that although his father was tied to a tree during the incident, he was not. His application for asylum, however, contains the following statement: "At the first time I didn't realized what had happened, but when I saw my father tight [words scratched out] to the trees next to the one I was tight took I remember what happened . . . ." I R. at 337–38 (errors in original). A medical evaluation from the United States also notes that Lissitchev reported he was tied to a tree. Id. at 238. In explanation, Lissitchev argues that the translator who helped him prepare his asylum application was inexperienced and may have made errors, and that he had difficulties communicating with the evaluating physician here in the United States. Language problems aside, we agree that there are

inconsistencies in the record about whether Lissitchev was tied to a tree during the burning incident. However, we agree with Lissitchev that this is not a "fundamental inconsistency" and does not affect the main thrust of the incident—that Lissitchev was doused with gasoline and set on fire. See Uwase v. Ashcroft, 349 F.3d 1039, 1043 (7th Cir. 2003) (minor inconsistencies "having nothing to do with [petitioner's] claim that she feared for her life" were insufficient to support an adverse credibility finding) (citing Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002); Diallo v. INS, 232 F.3d 279, 288 (2d Cir. 2000)); see also de Leon-Barrios v. INS, 116 F.3d 391, 393–94 (9th Cir. 1997) (noting that any discrepancies upon which a negative credibility finding rests must go to the "heart of the asylum claim") (quotation omitted). Notably, the record contains evidence supporting Lissitchev's claim: a doctor's letter opining, after examination, that Lissitchev has scars on his right shoulder, arm, and back which are consistent with burns. I R. at 238.

The third and final inconsistency the IJ relied on in finding Lissitchev's testimony incredible concerns the numerous "beatings" Lissitchev alleged he suffered in the years leading up to the burning incident. The IJ reasoned that Lissitchev's allegations on this point were not credible because Lissitchev could not suffer hundreds of beatings without medical evidence of any injury. But Lissitchev's testimony about the nature and length of these "beatings" is fully

consistent with the lack of permanent injury. Further, there is no other evidence in the record to support the IJ's conclusion that these allegations are implausible. Where an adverse credibility determination "is not based on a specific, cogent reason, but, instead, is based on speculation, conjecture, or an otherwise unsupported personal opinion, we will not uphold it . . . ." Dia, 353 F.3d at 250.

Accordingly, we are left with a single inconsistency in the record: the detail of whether Lissitchev was tied to a tree during the incident in which he was beaten and set on fire. In light of the record as a whole, we cannot conclude that this detail alone demonstrates a lack of credibility in Lissitchev's testimony. Because the IJ's decision lacks support from substantial evidence in the record, the BIA improperly affirmed the decision. We therefore **GRANT** the petition for review and **VACATE** the BIA's order. The matter is **REMANDED** to the agency for further proceedings on Lissitchev's application for withholding of removal.

Entered for the Court

Carlos F. Lucero
Circuit Judge