FILED
United States Court of Appeals
Tenth Circuit

October 1, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

IKENNA G. NKWONTA,

Petitioner,

v.

MICHAEL MUKASEY,
United States Attorney General,

Respondent.

No. 07-9582
(Petition for Review)

ORDER AND JUDGMENT[*]

Before **HOLMES**, **PORFILIO**, and **ANDERSON**, Circuit Judges.


Petitioner Ikenna G. Nkwonta, a native and citizen of Nigeria who is

proceeding in this appeal pro se, petitions for review of a decision of the Board of

Immigration Appeals (BIA) dismissing his appeal from the Immigration Judge's

(IJ) decision denying his applications for asylum and restriction on removal under

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the Immigration and Nationality Act (INA).[1]  We deny the petition for review and

affirm the denial of Mr. Nkwonta's applications for asylum and restriction on

removal.[2]

## I.  Standards for Asylum and Restriction on Removal.

We recently summarized the standards that must be met before a court can

grant asylum or restriction on removal to an illegal alien, such as Mr. Nkwonta,[3]

who is seeking to avoid deportation due to a fear of persecution in their

homeland:

> First, in order to be eligible for asylum, an alien must
> demonstrate by a preponderance of the evidence that she is a refugee,
> meaning that she is outside the country of her nationality and "is
> unable or unwilling to return to . . . that country because of
> persecution or a well-founded fear of persecution on account of race,
> religion, nationality, membership in a particular social group, or
> political opinion."  8 U.S.C. § 1101(a)(42)(A); *see also Elzour v.*

---

[1]      In his appeal to the BIA, Mr. Nkwonta did not appeal the IJ's denial of
his: (1) application for protection under the Convention Against Torture;
(2) application for voluntary departure; and (3) motion for a continuance.  *See*
Agency ROA at 2 n.1.  We therefore do not need to consider those matters.

[2]      Restriction on removal was known as "withholding of removal" before the
amendments to the INA made by the Illegal Immigration Reform and Immigrant
Responsibility Act of 1996.  The regulations under the INA, however, retain the
former term "withholding of removal."  *See* 8 C.F.R. § 208.16(b).  We will use
the statutory term "restriction on removal."  *See Ismaiel v. Mukasey*, 516 F.3d
1198, 1200 n.2 (10th Cir. 2008).

[3]      We note that Mr. Nkwonta is not challenging the IJ's findings that he is
removable from the United States because, in April 2005, he attempted to enter
the United States from Mexico without a valid entry document and made a false
statement to immigration officials regarding his employment status in this
country.

*Ashcroft*, 378 F.3d 1143, 1148-49 (10th Cir. 2004). She can establish refugee status in three ways: (1) by showing a well-founded fear of future persecution; (2) by showing past persecution sufficient to give rise to a presumption that she has a well-founded fear of future persecution; or (3) by showing past persecution so severe that it supports an unwillingness to return to the country where the persecution occurred. *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005). To prove a well-founded fear of [future] persecution, "it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a reasonable possibility." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 . . . (1987). . . .

Second, an alien may apply for restriction on removal in order to avoid being returned to the country of persecution. Restriction on removal under the INA prohibits the removal of an alien to a country "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Under the statute, the alien must establish "a clear probability of persecution[.]" *Elzour*, 378 F.3d at 1149. Like an asylum claim, once an alien has shown past persecution, there is a "presumptive entitlement to restriction on removal on the same basis." [*Niang v. Gonzales*, 422 F.3d 1187, 1195 (10th Cir. 2005).]

*Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335-36 (10th Cir. 2008).

We have also recently reiterated the meaning of the term "persecution":

Although persecution is not defined in the INA, we have held that a finding of persecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty. Such persecution may be inflicted by the government itself, or by a non-governmental group that the government is unwilling or unable to control.

*Id.* at 1337 (quotation omitted).

-3-

## II. Mr. Nkwonta's Persecution Allegations and Proceedings Below.

Mr. Nkwonta claims that he suffered past persecution in Nigeria and has a well-founded fear of future persecution if he is forced to return to Nigeria as a result of his past membership in a student-cult group known as the "Black Axe Confraternity." In his brief on appeal, the United States Attorney General has succinctly and accurately summarized Mr. Nkwonta's allegations regarding his experiences with the Black Axe Confraternity as follows:

> [In his application for asylum and restriction on removal,] Nkwonta asserted that during his first year at the University of Lagos, he was forced to join a "cult" named the "Black Axe Confraternity" ("Black Axe") against his will. Nkwonta explained that the Black Axe "started out like fraternities here in the USA, [but it] became corrupt and evil and [was] used by corrupt politicians . . . to rig elections and also [commit] political assassinations." Nkwonta further postulated that the organization "bullies, maims, and often kills innocent people" without recourse because it is sponsored by corrupt politicians and is uncontrollable by the Nigerian government.

> According to Nkwonta's account, in November 2001, a friend and fellow student, Mohammed Danjuma ("Danjuma"), drove him and two other students to a secluded area following a party. Nkwonta reported that he was forced from the car at gunpoint and fifteen to twenty armed people forcefully conscripted him into the Black Axe by means of a "blood oath" and beatings. Nkwonta indicated that he was a reluctant member of the Black Axe for four months and that he grudgingly paid his dues and attended meetings because "there was no way I could avoid them."

> However, Nkwonta asserted that in April 2002, he was able to renounce his membership in the Black Axe at a public rally upon the admonition of a "preacher based [] in the USA." Nkwonta then recounted that two days after the rally, he was detained by the Lagos University Police and forced to divulge the names of the "Black Axe members who had forced me to join against my will." Nkwonta

-4-

stated that he later learned that Danjuma was arrested and prosecuted.

Continuing with his story, Nkwonta reported that following his disassociation with the Black Axe threatening notes were left on his mother's car and his sister witnessed "a group of men wearing Black Axe colors gathered outside [his] home and fired shots in the air." Furthermore, Nkwonta asserted that on September 9, 2002, four men "dressed in Black Axe clothing" abducted him, castigated him for being a traitor, beat him, tied him to the back of a car, and dragged him around a deserted soccer field. Nkwonta stated that he was hospitalized for five days and hired police protection.

Nkwonta further alleged that his older brother, "who would pass as my twin," was stabbed and beaten in October 2002, purportedly because "[the attackers] seemed to think he was me."

Resp. Br. at 9-11 (first alteration added; citations to administrative record and footnotes omitted).

In February 2006, the IJ held a hearing on Mr. Nkwonta's applications for asylum and restriction on removal, and Mr. Nkwonta was represented by counsel at the hearing. At the conclusion of the hearing, the IJ told Mr. Nkwonta's counsel that he had significant doubts about the merits of Mr. Nkwonta's applications, explaining that:

one of the difficulties in the case in my opinion from [Mr. Nkwonta's] perspective is to show a nexus between his claimed harm and any of the five statutory grounds for asylum. In this regard, I guess he would claim social group, but normally, the social group works when you're a member of the social group being persecuted . . . . In addition, except in a few Circuits, voluntary associations of people are not social groups for purposes of the Immigration and Nationality Act. Rather, the Board of Immigration Appeals has told us to look for immutable characteristics or common traits that either cannot or shouldn't, they should not be required to

-5-

change.  So, I don't see that [Mr. Nkwonta] is having any problems here because of membership in a social group.  It's almost like being a member of a gang, a criminal gang, and then leaving and having problems because your leaving.

Agency ROA at 152.  In response to the IJ's statements, Mr. Nkwonta's counsel stated that Mr. Nkwonta "is a member of a social group.  It's a social group of students who are forced to join a violent fraternity.  It's uncontroverted testimony that he was forced into it." *Id.* at 153.

After hearing further argument from counsel for both sides, the IJ entered an oral decision denying Mr. Nkwonta's applications for asylum and restriction on removal, reasoning as follows:

> Even assuming that we accept [Mr. Nkwonta's] story as true and correct in all respects, the Court believes [he] has failed to state any claim for asylum [or restriction on removal].  In this regard [Mr. Nkwonta's] difficulties, he says, resulted from his -- essentially -- conscription into a violent fraternity and then his difficulties with that organization upon his attempting to leave it.  Again, here this in the Court's view is not a social group situation as we have no immutable characteristics that are involved here, but rather we have an associational situation even though he says [] he was forced into this.  It was a matter of association rather than any type of characteristic with which this particular respondent was born in terms of tribe or clan or other social group where we do have immutable characteristics.  Again, the Court does not understand the 10th Circuit to be one that recognizes social group based on associational connections rather than immutable characteristics.

> Essentially, again, the Court's unable to see here that [Mr. Nkwonta] has established a nexus even if we take his story as true between the difficulties he claims to have experienced in Nigeria and one of the five statutory grounds for asylum.  The Court believes, therefore, that he has also failed to establish eligibility for [restriction on removal].

*Id.* at 43-44.

Mr. Nkwonta subsequently appealed to the BIA, and he was represented by

the same attorney in the BIA proceedings. The BIA dismissed the appeal,

concluding as follows:

> It has not been shown that the Immigration Judge erred in concluding
> that even assuming credibility, [Mr. Nkwonta] has not established the
> requisite nexus between any past or prospective harm and a protected
> ground under the Act. [Mr. Nkwonta] did not identify nor can we
> find any evidence in the record that would suggest that any harm
> inflicted on [him] by the Black Axe confraternity was motivated by
> actual or imputed political opinion. On appeal, [Mr. Nkwonta] also
> claimed, without any specificity, that he was persecuted by the
> confraternity on the basis of his membership in a particular social
> group. However, he has not specified the particular social group in
> which he has claimed membership. We are unable to conclude that
> [Mr. Nkwonta] has established that he experienced harm or faces a
> reasonable risk of harm on account of his membership in a
> "particular social group," as this term has been defined for purposes
> of determining asylum eligibility. *See Matter of A-M-E & J-G-U-*,
> 24 I&N Dec. 69 (BIA 2007); *Matter of C-A-*, 23 I&N Dec. 951 (BIA
> 2006); *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985). . . .

*Id.* at 3.[4]

---

[4]     The BIA also made an alternative finding to the effect that Mr. Nkwonta
put forth insufficient evidence to show that he "was persecuted and fears
persecution by a group that the government [of Nigeria] is unwilling or unable to
control as required for asylum and [restriction on] removal." Agency ROA at 4.
Because we rely on the BIA's initial determination of unprotected status to affirm
the denial of Mr. Nkwonta's applications for asylum and restriction on removal,
we do not need to address this issue.

### III. BIA's Streamlining Regulations and Standards of Review.

"Because this petition [for review] follows reasoned opinions from both the IJ and BIA, we will first delineate the scope of our judicial review." *Diallo v. Gonzales*, 447 F.3d 1274, 1278 (10th Cir. 2006). As we recently explained:

> Until 1999, all appeals to the BIA were decided by three-member panels whose opinions constituted the final decision of the agency. Pursuant to regulations promulgated by the Attorney General in 1999 and 2002, the BIA now has three options: decision by a three-member panel with a full explanatory opinion, 8 C.F.R. § 1003.1(e)(6), summary affirmance by a single member of the board without opinion, *id.* § 1003.1(e)(4), or decision via a brief order by a single member of Board, affirming, modifying, or remanding the IJ's decision, *id.* § 1003.1(e)(5). . . .

> Our scope of review depends upon which of these three forms the BIA decision takes. . . .

> "If the case is more significant than an (e)(4) case and less significant than an (e)(6) case," [*Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1190 (10th Cir. 2005)], a single BIA member can decide the merits of the appeal and issue "a brief order, affirming, modifying, or remanding" the IJ's order, 8 C.F.R. § 1003.1(e)(5). Such an order is a "middle ground . . . between the full opinion and summary affirmance options." [*Uanreroro v. Gonzales*, 443 F.3d 1197, 1203-04 (10th Cir. 2006)]. In *Uanreroro* we held that such an order constitutes "the final order of removal under 8 U.S.C. § 1252(a)," and thus the Court "will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." 443 F.3d at 1203-04.

*Sarr v. Gonzales*, 474 F.3d 783, 789-90 (10th Cir. 2007).

After addressing the merits of Mr. Nkwonta's applications for asylum and restriction on removal in a three-page decision, a single member of the BIA "dismissed" Mr. Nkwonta's appeal. *See* Agency ROA at 4. This was an

erroneous disposition, however, because, while the controlling regulations provide for "summary dismissals" by the BIA in certain limited circumstances, *see* 8 C.F.R. § 1003.1(d)(2), none of those circumstances apply here. In addition, the BIA member's decision was clearly not a summary affirmance without an opinion under § 1003.1(e)(4), as the member issued a substantive decision addressing the merits of Mr. Nkwonta's applications. As a result, we will treat the BIA member's disposition as a "brief order" under § 1003.1(e)(5) "affirming" the IJ's decision, and, in accordance with our precedent, we will review that order as the final order of removal under 8 U.S.C. § 1252(a).

"We review the BIA's findings of fact under the substantial evidence standard, and its legal determinations *de novo*." *Hayrapetyan*, 534 F.3d at 1335. "Under the substantial-evidence standard, our duty is to guarantee that [the BIA's] factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Niang*, 422 F.3d at 1196 (quotation omitted). "The BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quotation omitted). "In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Hayrapetyan*, 534 F.3d at 1335

(quotation omitted).  However, "[w]hat constitutes a particular social group is a pure question of law that we review de novo."  *Cruz-Funez*, 406 F.3d at 1191.

### IV.  Analysis.

In the notice of appeal that he submitted to the BIA, Mr. Nkwonta asserted that the IJ erred: (1) "in failing to find that [he] has been persecuted by the Black Axe fraternity . . . on the basis of his political opinion and membership in a particular social group because he was forced to join the Black Axe fraternity against his will and take part in the induction ceremonies"; (2) "in failing to find that [he] was persecuted by the Black Axe fraternity by having his life threatened and by being beaten up by Black Axe fraternity members after he denounced his membership in the fraternity"; and (3) "in failing to find that [he] has a well-founded fear of future persecution if he returns to Nigeria because the Black Axe Fraternity has already beaten him up."  Agency ROA at 32.

As noted by the BIA member in his decision, however, in the brief that Mr. Nkwonta submitted to the BIA, his counsel failed to identify any political opinions which were held by or imputed to Mr. Nkwonta that were motivating the conduct of the Black Axe members.  *Id.* at 11-14; *see also INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992) (holding that persecution must be on account of the *victim's* political opinion or other protected characteristic, not that of the persecutor).  Likewise, Mr. Nkwonta has failed to identify any such political

-10-

opinions in the pro se brief that he submitted to this court. This failure is fatal to any political-opinion claim.

As further recognized by the BIA member, Mr. Nkwonta's counsel also made no effort in the BIA proceedings to identify the particular social group in which Mr. Nkwonta was claiming membership. Agency ROA at 11-14. On this point, it was simply not enough for Mr. Nkwonta's counsel to identify the Black Axe Confraternity and then allege that Mr. Nkwonta had been harmed by members of that group. *Id.* at 12. First, Mr. Nkwonta has never alleged that he was persecuted *because of his membership in the Black Axe Confraternity*. To the contrary, his alleged persecution is based on: (1) his forced and violent conscription into the ranks of the Black Axe Confraternity; and (2) the harm he endured after he denounced and left the group. In the proceedings before the BIA, however, Mr. Nkwonta's counsel failed to articulate a social-group status *belonging to Mr. Nkwonta* that motivated either of these categories of alleged persecution, and Mr. Nkwonta has duplicated that failure in the pro se brief that he submitted to this court.

Second, even if Mr. Nkwonta were claiming that he was persecuted because of his membership in the Black Axe Confraternity, we can say unequivocally that a criminal gang/cult like the Black Axe Confraternity does not qualify as a "social group" under the "immutable characteristic" test that this court has adopted for evaluating social-group persecution claims. *See Niang*, 422 F.3d at 1198-99

-11-

(adopting definition of "particular social group" that BIA formulated in *In re Acosta*, 19 I&N Dec. 211 (BIA 1985),[5] which requires a group of persons who all share a common, immutable characteristic, *i.e.*, a characteristic that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences). To state the obvious, membership in a criminal gang/cult is not something that a person either cannot change or should not be required to change.

Finally, as noted above, at the hearing before the IJ, Mr. Nkwonta's counsel did attempt to articulate a particular social group, arguing that Mr. Nkwonta belonged to a social group consisting of "students who are forced to join a violent fraternity." Agency ROA at 153. We agree with the Attorney General, however, that this "putative particular social group is overbroad and too indefinite to constitute a 'particular' social group within the meaning of the INA." Resp. Br. at 31; *see also In re S-E-G-*, 24 I&N Dec. 579, 582 (BIA 2008) (noting that BIA's "recent decisions hold[] that membership in a purported social group requires that the group have particular and well-defined boundaries"). Further, it is an impermissible circular definition, defining a group in terms of those who suffer persecution. *See Rreshpja v. Gonzales*, 420 F.3d 551, 555-56 (6th Cir. 2005) (noting that "almost all of the pertinent decisions have rejected generalized,

---

[5]     We note that the BIA overruled *Acosta* on other grounds in *In re Mogharrabi*, 19 I&N Dec. 439 (BIA 1987).

sweeping [social group] classifications," and that "a social group may not be circularly defined by the fact that it suffers persecution. The individuals in the group must share a narrowing characteristic other than their risk of being persecuted.").

In sum, we agree with the Attorney General that, "[b]ecause [Mr.] Nkwonta has never asserted that his initiation [into the Black Axe Confraternity] or his and his family's subsequent harm was in relation to anything other than the Black Axe's desire for additional conscripts or in retaliation for his defection, he has not shown that his alleged persecution or fear thereof was on account of a protected ground." Resp. Br. at 32; (citing *Ustyan v. Ashcroft*, 367 F.3d 1215, 1217 (10th Cir. 2004) (finding no persecution where petitioner failed to show that his beating, detention in a cell exposed to chlorine gas, and the destruction of his home were on account of his ethnic identity or imputed political beliefs and not simply in retaliation for his resistence to recruitment efforts); *Bartesaghi-Lay v. INS*, 9 F.3d 819, 822-23 (10th Cir. 1993) (finding that reprisal for alien's rejection of solicitation to join drug-smuggling operation was not on account of a protected ground)). Accordingly, the BIA did not commit a legal or factual error in denying Mr. Nkwonta's applications for asylum and restriction on removal.

## V. CONCLUSION.

For the foregoing reasons, we **DENY** the petition for review and **AFFIRM** the BIA's denial of Mr. Nkwonta's applications for asylum and restriction on removal.

Entered for the Court

Jerome A. Holmes
Circuit Judge